**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:13CR383 |
| | ) | |
| JEREMY HELLER | ) | The Honorable Liam O'Grady |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS STATEMENTS**

COMES NOW the defendant, Jeremy Heller, by and through undersigned counsel, and support of his Motion to Suppress Statements previously argued to this Honorable Court, states as follows:

**BACKGROUND**

Mr. Heller previously argued that his statements should be suppressed due to violations of his rights under the Fifth Amendment of the United States Constitution. The Fifth Amendment requires that "[n]o person … shall be compelled in any criminal case to be a witness against himself." *U.S. Const. amend. V*. Mr. Heller based his argument for suppression on the circumstances of his questioning as both quasi-custodial and involuntary.

On May 2, 2014, and June 6, 2014, this Court held a hearings on defendant's motion to suppress his statements allegedly made during an investigation in 2011. The Court received testimony from Special Agent Nail during the two hearings, and testimony from Mr. Heller during the second hearing. The court also received some pictures and a copy of the agent's 302 as exhibits during the hearing.

Special Agent Nail testified in both hearings about his questioning of Mr. Heller. He testified that he raised the issue of why he was there at the outset of the questioning, though he later acknowledged that the 302 set out the sequence of the conversation. (May Tr. 68, 70, June 6 Tr. 11). Questions about Mr. Heller's historical and biographical information were discussed prior to any questioning about Anonymous. *Id.* S.A. Nail also described having contacted the Target store manager about speaking to Mr. Heller and the management office that was made available to the agents for use to question Mr. Heller. (May 2 Tr. 65; June 6 Tr. 5-8). S.A. Nail testified that the manager left the office after Mr. Heller was brought to the office (May 2 Tr. 67-68), though he later could not remember if the manager came to the office. (June 6 Tr. 8). S.A. Nail testified that there were notes taken during the interview, though that was later thought not to be the case. (May 2 Tr. 76, June 6 Tr. 3-4).

Mr. Heller testified about that he was brought to a manager's office by Target management personnel. (June 6 Tr. 19-20). Specifically, Mr. Heller explained that he was approached by a team leader and told that he needed to go with her. (June 6 Tr. 19). He stated that a floor manager who he knew approached him initially and told he need to come with her though she could not provide an explanation why. (June 6 Tr. 19). He was delivered to the head level manager for Asset Protection who asked Mr. Heller "if he had done anything wrong" and who escorted Mr. Heller to the office of the store manager and the head of human resources where he was interviewed. (June 6 Tr. 19-20).

When asked whether he had seen other employees removed from the floor by management, Mr. Heller replied that he had seen it "[p]lenty of times." (June 6 Tr. 17-18). He went on to say that "[t]he Target is classified as a high risk store by its own assessments, so it happens quite often." *Id.*

2

He further stated that he was familiar with the way the removal process works and in fact he had "facilitated the Asset Protection team in doing so as well." (June 6 Tr. 18). Mr. Heller knew the office to which he was delivered to be the location where personnel actions and reprimands took place. (June 6 Tr. 20). Mr. Heller became nervous because his questions were not answered about what was happening, but he assumed it to be some Target related issue. (June 6, Tr. 21).

Mr. Heller testified that he assumed himself to be in custody of Target upon being picked up by Robert from Asset Protection, and he said that he has witnessed Asset Protection working closely with law enforcement before. (June 6 Tr. 38). He also stated that the initial questions he was asked about his online activity could have related to his employment with Target since Target has personnel policies concerning online activity. (June 6 Tr. 39-40, 43).[1] Mr. Heller testified that he answered some preliminary questions about himself and about his online activity before Anonymous was ever raised, but he said that he invoked upon learning that the questioning involved Anonymous. (June 6, Tr. 35-36, 40, 42-43). Upon being advised that the investigation was about Anonymous, Mr. Heller invoked his right to counsel. *Id.*

## ARGUMENT

By using the management of Target and their Asset Protection personnel to deliver Mr. Heller to the HR and manager's office, the government accomplished something it otherwise could not do. Those circumstances combined to place Mr. Heller in a location for questioning where he was ill-at-

---

[1] The current version of those policies are in a written personnel manual for Target, available at: https://www.targetcw.com/forms/TargetCW_Employee_Handbook_2012.pdf. The manual currently in place was updated in 2014 (despite the link name), and it includes several prohibitions regarding online activity in a variety of forms. (See p. 6).

ease and under a belief that he had no choice but to speak with his questioners in that office because that was Target policy. At the outset of questioning, Mr. Heller could have reasonably believed that the questioning regarding his online activity still related to his employment with Target, and that he had no choice but to comply with the questioning. As Mr. Heller testified, he believed that he was in custody, and he was aware of Target's policies concerning online activity at the time of the interview so the substance and manner of the questions being posed did not make it clear that he could end the questioning. Upon learning that he was being questioned about matters aside from his employment with Target, he invoked his right to counsel. This sequence is supported by Mr. Heller's testimony, the agent's 302, and common sense – a person who is capable of invoking his right to counsel would reasonably do so upon learning that he was being investigated in a criminal matter(the very thing for which invocations are permitted), not a matter related to his employment.

The Supreme Court has concluded that the false choice between self-incrimination and coercion amounts to coercion. *See Garrity v. New Jersey*, 385 U.S. 493, 497-98 (1967).

> The choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. That practice, like interrogation practices we reviewed in *Miranda v. Arizona*, 384 U.S. 436, 464-465, is "likely to exert such pressure upon an individual as to disable him from making a free and rational choice." We think the statements were infected by the coercion inherent in this scheme of questioning and cannot be sustained as voluntary under our prior decisions.

*Id.*; *see also Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) ("The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in further

criminal proceedings."). Moreover, the Fourth Circuit has also explained that "[i]f the State presents a person with the 'Hobson's choice' of incrimination himself or suffering a penalty" and "if the threatened person decides to talk instead of asserting his privilege, the State cannot use his admission against him in a subsequent criminal prosecution." *Wiley v. Doory*, 14 F.3d 993, 4th Cir. (1994).

Mr. Heller was faced with the Hobson's Choice of whether to speak with his questioners in management office or be fired by Target. As he explained, he was familiar with Asset Protection and their procedures, and he knew of Target's employee requirements. In fact he had "facilitated" the Asset Protection team's actions against others previously. Mr. Heller had every reason to believe that he had to comply with the questioning taking place in the management office. He knew what would happen if he did not comply. In effect, the government utilized Target employees to cause Mr. Heller to reasonably believe that his job was in jeopardy if he did not come to the room, where he was interviewed believing that he had to comply. Only after learning that he was being questioned about matters beyond his employment did Mr. Heller invoke his right to counsel. The circumstances surrounding Mr. Heller's questioning up to the point of invocation amounts to improper coercion, and any statements made by Mr. Heller must be suppressed.

Without the involvement of Mr. Heller's employer, the government would have been unable to persuade Mr. Heller to answer any of their questions. The FBI agents did not give Mr. Heller *Miranda* warnings prior to the beginning of questioning, and any statements made by Mr. Heller were not voluntary and should be suppressed. The evidence adduced at the hearing make it clear that Mr. Heller believed himself to be in custody. In addition to the questions that arise from the question of custody applied in *Miranda*, this Court must ensure that the statements made by an accused are

fully voluntary. Under the circumstances before this Court, the statements made were not voluntary. Mr. Heller's statements should not be permitted to be used against him.

## CONCLUSION

Accordingly, for the foregoing reasons, it is respectfully requested that the Motion to Suppress be granted, and that the Court suppress all statements made by Mr. Heller in response to questions by the FBI agents.

Respectfully submitted,

JEREMY HELLER
By Counsel,

Michael S. Nachmanoff,
Federal Public Defender

/s/
W. Todd Watson, Esquire
Attorney for Defendant
Virginia Bar No. 38527
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
(703)600-0878 (telephone)
(703)600-0880 (facsimile)
Todd_Watson@fd.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 20, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Alexander Nguyen and Jay Prabhu
    Assistant United States Attorneys
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    (703)299-3700
    Alexander.nguyen@usdoj.gov
    Jay.prabhu@usdoj.gov

and all counsel of record.

      A courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the filing.

                                              /s/
                                              W. Todd Watson, Esquire
                                              Attorney for Defendant
                                              Virginia Bar No.38527
                                              Office of the Federal Public Defender
                                              1650 King Street, Suite 500
                                              Alexandria, VA   22314
                                              (703)600-0878 (telephone)
                                              (703)600-0880 (facsimile)
                                              Todd_Watson@fd.org