IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUL 25 2014

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>-v-<br><br>DENNIS OWEN COLLINS, *et al.*,<br><br>                     Defendants. | Case No. 1:13-CR-00383 |

## ORDER

Before the Court is Defendant Jeremy Heller's Motion to Suppress Statements (Dkt. No. 172). The Government has opposed the motion (Dkt. No. 214). The Court reviewed the pleadings and heard testimony and oral argument on June 6, 2014, after which it requested supplemental briefing from the parties on the issue of the voluntariness of Defendant's statements to the agents, in light of the role his employer played in the interview. Defendant submitted a supplemental brief on June 20, 2014 (Dkt. No. 292), to which the Government responded (Dkt. No. 300). The Court has reviewed the supplemental pleadings and now issues this order denying Defendant's motion to suppress.

On January 27, 2011, the FBI executed a search warrant at Defendant's home. The home was unoccupied at the time of the search, which led agents to the Target store at which Defendant was employed in an effort to interview him. Upon arrival, agents spoke with the manager of the Target, who offered to bring the Defendant to the manager's office for the interview. When the Defendant arrived, the agents identified themselves as FBI agents. Special Agent Nail testified that the agents told Mr. Heller that he was not under arrest and that he was free to leave at any time. At some point early in the questioning, the agents informed Defendant

that his home had been searched as part of an investigation into the Anonymous group. Defendant proceeded to answer several questions about his Internet usage. After Agent Nail questioned Defendant about his involvement in the Anonymous DDoS attacks, Defendant denied his involvement with Anonymous and invoked his right to counsel. After Defendant asked for a lawyer, agents terminated the interview and the Defendant left the room.

Defendant argues that the Government's use of Target's management personnel and facilities allowed it to accomplish what it could not have on its own—to put the Defendant in an uncomfortable and coercive situation, and to make him feel as if he was not free to leave and had no choice but to speak with the agents. Defendant testified that he believed he was in Target's custody and that the nature of the questioning (relating to his online activities) did not rule out the possibility that he was being asked about his employment with Target. He argues that his responses to the agents' questions were therefore involuntary because he was in a situation that presented "the false choice between self-incrimination and coercion." Def. Supp. Br. at 4.

Although Defendant argues that the Government would have been unable to persuade Mr. Heller to answer any of its questions without Target's assistance, the Court does not find that Defendant's will was overborne by the Government's reasonable use of Target employees. Importantly, the Supreme Court has held that coercive activity *by the police* is "a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). There is no evidence from which the Court could find that the agents intentionally or knowingly leveraged Target employees to create a coercive environment. To the contrary, the interview only occurred at Target because the Defendant was not at his home during the execution of the search warrant, and it only occurred in the manager's office because that location was suggested *by the manager*

as the least disruptive setting for the interview. In all other respects, the interview was cordial and non-coercive: the agents did not state or imply that Defendant's job at Target would be at risk if he did not participate, and Defendant felt at ease enough to request an attorney and ultimately terminate the interview. The Court also credits Agent Nail's testimony that Defendant was informed at the outset of the interview that he was being interviewed by the FBI as a part of the government's investigation of the Anonymous group.

Under these facts, it is clear that Defendant's statements to the agents were not involuntary. Although Target employees did facilitate the agents' interview with Defendant by providing them with an office in which to speak, there is no evidence that they were acting as agents of the police or were otherwise used strategically by the government. Under *Garrity v. New Jersey*, 385 U.S. 493 (1967), government action is a prerequisite to a finding that a defendant was compelled to give testimony to his employer. Therefore, even extending the *Garrity* line of cases to private sector jobs, Defendant's claim fails. Because the evidence demonstrates that Defendant's interview was non-custodial and that his will was not overborne by any coercion attributable to the government, it is hereby **ORDERED** that:

1. Defendant's Motion to Suppress (Dkt. No. 172) is **DENIED**.

July 25, 2014  
Alexandria, Virginia

/s/  
Liam O'Grady  
United States District Judge